UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

David James Koski,

Petitioner,

vs. REPORT AND RECOMMENDATION

Commander Greg Peterson,
Dakota County Jail, and
Michael A. Hatch, Attorney
General of the State of
Minnesota,

Respondents. Civ. No. 01-861 (DSD/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 18th day of July, 2001.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Petitioner's request for a Writ of Habeas Corpus, in which he alleges that he is incarcerated in violation of the Constitution, Laws, or Treaties of the United States. See, Title 28 U.S.C. §2254 (a). The Petitioner has appeared by Ellis Olkon, Esq., and the Respondent has appeared by Nicole E. Nee, Assistant Dakota County Attorney. For reasons which follow, we recommend that the Petition for Habeas Corpus be denied.

FILED JUL 18 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## II. Factual and Procedural History

The Petitioner is currently serving a 6-month prison term, at the Dakota County Jail, in Hastings, Minnesota ("DCJ-Hastings"), which was imposed by the Dakota County District Court, on December 15, 1999.[1] The Petitioner was sentenced following a conviction for First Degree Criminal Sexual Conduct, in violation of Minnesota Statutes Section 609.342(1), Subdivision 1(A).

In May of 1999, M.P. was a four year old girl who resided in Burnsville, Minnesota with her mother, M.K., and with the Petitioner, who is her stepfather. The Petitioner and M.K. were married in 1996. M.P.'s biological father was not involved in her life and, therefore, she referred to the Petitioner as "daddy."

According to the Petitioner, his marriage with M.K. was rife with conflict. Apparently, the Petitioner had concerns about M.K.'s honesty, as he had originally met her while she was using a false name. Nevertheless, despite his problems with M.K., the Petitioner cared for M.P. as though she were his own daughter.

During the weekend of May 8-9, 1999, the Petitioner cared for M.P. while M.K. was at work. Thereafter, on May 10, 1999, while

---

[1]The Petitioner was committed to a period of 86 months in the custody of the Commissioner of Corrections, but the sentence was stayed while the Petitioner was placed on supervised probation. As part of his probation, the Petitioner was ordered to serve 180 days in the Dakota County Jail, with work release privileges.

M.K. was toweling off M.P. after giving her a bath, M.P. pointed to her vaginal area and directed her mother to put medicine there. At this point, M.K. noticed that her daughter's vaginal area was red, and she inquired about what had happened. In response, M.P. allegedly stated that "daddy touch me here with his fingers and his mouth." M.K. assertedly asked M.P. several times if she was sure of what she was saying and, on each occasion, M.P. responded affirmatively.

On May 12, 1999, M.K. made an appointment for M.P. to visit a physician. That night, after the Petitioner arrived home from work, M.K. accused him of touching her daughter inappropriately. The Petitioner denied having abused M.P., and an argument ensued. Afterwards, M.K. took M.P. to a babysitter, so that she could be supervised while M.K. was at work.

On May 13, 1999, M.K. took M.P. to be examined by a physician. During this visit, M.K. told a nurse practitioner that M.P. had alleged that the Petitioner had touched her inappropriately. M.P. sat in M.K.'s lap as the practitioner and M.K. talked, but the nurse practitioner did not examine M.P. at that time. Rather, the nurse practitioner referred M.K. to the Burnsville Police Department, and to Children's Hospital. Thereafter, M.K. traveled to the Burnsville Police Department, where she was interviewed by Officer Clark Holden ("Holden"). Holden did not interview M.P.

The next day, M.K., along with Holden and M.P., met with a social worker, Mary Dentz ("Dentz"), at the Midwest Children's Resource Center. Initially, M.P. waited in a play area while Holden, M.K., and Dentz, discussed M.P.'s allegations. Thereafter, Dentz took M.P. to an examination room, where she conducted a videotaped interview of M.P., as well as a physical examination. During the examination, Dentz failed to uncover any evidence of physical abuse but, once again, M.P. reiterated her assertion that the Petitioner had touched her vaginal area with his fingers and mouth. Specifically, the following exchange, between M.P. and Dentz, transpired:

> Q: Well, I was wondering if anything ever happened to your pee-pee that you didn't like.
>
> A: I hurt -- I hurt. Because I really hurt right there.
>
> Q: It hurts there, and you're pointing to your pee-pee. It hurts there, why does your pee-pee hurt there?
>
> A: Because it hurts because my daddy touched it.
>
> Q: Because your daddy touched it. What it [sic] your daddy touch it with?
>
> A: With finger.
>
> Q: With finger. Did your daddy touch it with anything else?
>
> A: Yes.

Q: What did he touch it with?

A: With mouth and with his finger.

Q: With his mouth and with his fingers?

A: Yeah.

Q: Where were you when that happened?

A: In mommy's bed.

Q: Where was mommy?

A: Working.

Q: Was anyone else at your house when this happened?

A: Only one.

Q: Only one who?

A: My daddy and me.

On July 16, 1999, the Trial Court conducted an Omnibus Hearing in order to determine the admissibility of M.P.'s out-of-court statements. After the Hearing, the Trial Court ruled that M.P.'s statements to M.K., and to Dentz, were admissible pursuant to Minnesota Statutes Section 595.02, Subdivision. 3.[2]

---

[2]Section 595.02, Subdivision 3 states, in relevant part, as follows:

> An out-of-court statement made by a child under the age of ten years or a person who is mentally impaired as defined in section 609.341, subdivision 6, alleging, explaining, denying, or describing any act of sexual con-

(continued...)

Specifically, the Trial Court ruled that the statements, which were made by M.P., to M.K., and to Dentz, were voluntary, and were not prompted inappropriately. In addition, the Court found both M.K., and Dentz, to be reliable witnesses. Thereafter, on August

---

[2](...continued)

tact or penetration performed with or on the child or any act of physical abuse of the child or the person who is mentally impaired by another, not otherwise admissible by statute or rule of evidence, is admissible as substantive evidence if:

(a) the court or person authorized to receive evidence finds, in a hearing conducted outside of the presence of the jury, that the time, content, and circumstances of the statement and the reliability of the person to whom the statement is made provide sufficient indicia of reliability; and

(b) the child or person mentally impaired as defined in section 609.341, subdivision 6, either:

(i) testifies at the proceedings; or

(ii) is unavailable as a witness and there is corroborative evidence of the act; and

(c) the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

30, 1999, the Trial Court ruled that M.P. was incompetent to testify at Trial. However, the Court found that M.P.'s vaginal redness, in conjunction with the spontaneous statements made to M.K., and to Dentz, as well as the consistency of those statements, gave sufficient indicia of reliability for the statements to be admitted pursuant to Minnesota Statutes Section 595.02. Further, the Court found that the statements, which were made by M.P., to Dentz, were admissible as statements made for medical diagnosis under Rule 803(4) of the Minnesota Rules of Evidence.

Following a Jury Trial, the Petitioner was convicted of First Degree Criminal Sexual Conduct, and of Second-Degree Criminal Sexual Conduct. During the Trial, the prosecution submitted evidence of M.P.'s statements to M.K., and to Dentz. As well, M.P.'s daycare provider, Grizelda Cerero ("Cerero"), testified that M.P. told her that her father had touched her vaginal area with his tongue. In response, the Petitioner denied the allegations, and argued to the Jury that M.K., and M.P., had fabricated the allegations of abuse.

Following his conviction, the Petitioner appealed to the Minnesota Court of Appeals, on the grounds that the evidence presented at Trial was not sufficient to support the Jury Verdict, and that the Trial Court erred by admitting the hearsay testimony of M.K. See, State v. Koski, 2000 WL 1946828 (Minn. App. Jan. 16, 2001).

The Minnesota Court of Appeals rejected the Petitioner's contentions in an unpublished decision which was filed on January 16, 2001. Id. Thereafter, the Minnesota Supreme Court denied further review on March 13, 2001.

On May 17, 2001, the Petitioner filed the current Petition for a Writ of Habeas Corpus, in which he seeks to overturn his original conviction, based upon the same arguments that he raised in his original State Court appeal. In this respect, the Petitioner argues that the evidence presented during his Trial was insufficient to sustain his convictions as a matter of law, and that the Trial Court erred by allowing into evidence the out-of-court statements that were made by M.P. The Petitioner contends that M.P.'s out-of-court statements were not sufficiently trustworthy, or corroborated, to be allowed into evidence. We are not so persuaded and, therefore, we recommend that the Petitioner's request for a Writ of Habeas Corpus be denied.

## III. Discussion

### A. The Confrontation Clause.

1. Standard of Review. The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." U.S.Const.Amend. VI. Notwithstanding its absolutist language, this provision "permits, where necessary, the admission of

certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial," Maryland v. Craig, 497 U.S. 836, 847-48 (1990), provided that the statements "bear adequate 'indicia of reliability.'" Ohio v. Roberts, 448 U.S. 56, 66 (1980).[3]

For the purposes of the Confrontation Clause, the reliability requirement is satisfied "where the hearsay statement 'falls within a firmly rooted hearsay exception,' or where it is supported by 'a showing of particularized guarantees of trustworthiness.'" Idaho v. Wright, 497 U.S. 805, 815 (1990), quoting Ohio v. Roberts, supra at 66. In determining whether particularized guarantees of trustworthiness exist, a Court must examine "the totality of circumstances that surround the making of the statement and that render the declarant worthy of belief." Id. at 820. Significantly, in Wright, the Supreme Court explained that "the relevant circumstances include only those that surround the making of the statement." Id. at 819. Consequently, the Confrontation Clause analysis must be made without reference to the other evidence at Trial. In the Supreme Court's view, "the use of corroborating

[3]In White v. Illinois, 502 U.S. 344, 354 (1992), the Supreme Court held that, where the declarant is not subject to cross-examination, his availability is relevant only when the challenged out-of-court statements were made in the course of a prior judicial proceeding.

evidence to support a hearsay statement's 'particularized guarantees of trustworthiness' would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial." Id. at 823.

In Idaho v. Wright, supra, the Supreme Court comprehensively examined how the Confrontation Clause should apply in a case involving alleged child-abuse. There, the issue was the admissibility of certain statements which a child-abuse victim had made to a pediatrician. As here, the statements had been admitted under a State law residual exception to the hearsay rule. Since, in the Court's view, a residual exception "is not a firmly rooted hearsay exception for Confrontation Clause purposes," the Court examined the record there, for particularized guarantees of trustworthiness. While the Court identified several factors that bore upon the reliability of a child's hearsay statements -- such as, spontaneity and repetition, the mental state of the declarant, the use of terminology, and the lack of motive to fabricate -- the Court "decline[d] to endorse a mechanical test," and granted Courts "considerable leeway in their consideration of appropriate factors." Id. at 821-22.

2. Legal Analysis. With this explication of the law as our focus, we conclude that the Petitioner's Confrontation Clause challenge is without merit.

Prior to Trial, the Petitioner objected to the introduction of the statements by M.P., that she had made both to M.K., and to Dentz. In overruling the Petitioner's objections, the Trial Court noted that M.P.'s vaginal redness, in conjunction with the spontaneity of the statements made to M.K., and Dentz, as well as the consistency of those statements, gave sufficient indicia of reliability for the statements to be admitted.

On appeal, the Minnesota Court of Appeals also considered whether the hearsay statements had particular guarantees of trustworthiness. In evaluating the admissibility of the statements, the Court noted that, prior to M.P.'s initial allegations of sexual abuse, M.K. had no preconceived idea that any such abuse was occurring. Further, the evidence demonstrated that M.P.'s initial allegations were spontaneously made, in conjunction with her complaints of pain. These initial allegations were entirely consistent with the statements made by M.P., to both Dentz, and to Cerero. Finally, the Court concluded that the timing of the statements supported their reliability, as they were made within a day of the occurrence of the alleged abuse. Given these factors, the Court concluded that M.P.'s statements contained sufficient indicia of reliability to allow their admission at Trial.

As we have related, to succeed under Section 2254(d)(1), the Petitioner must show that the State Court either utilized the wrong

legal standard, or that it unreasonably applied the pertinent standard to the facts of the case. As to the first issue, there can be no dispute that the Court of Appeals adhered to "clearly established" legal principles, as they have been determined by the United States Supreme Court. The Minnesota Court of Appeals accurately identified the controlling legal standard; namely, whether the challenged statements contained sufficient indicia of reliability.

We further conclude that the Court of Appeal's application of the governing law to the facts of the Petitioner's case -- that is, the Court's resolution of the mixed question of fact and law[4] -- cannot be adjudged "unreasonable." While there is no "mechanical test for determining 'particularized guarantees of trustworthiness' under the [Confrontation] Clause," Idaho v. Wright, supra 822, we find that the Minnesota Court of Appeals properly particularized a number of guarantees which, taken together, justify the Trial Court's decision to admit the challenged statements into evidence.

As noted by the Minnesota Court of Appeals, the evidence presented at Trial demonstrated that M.P.'s statements to M.K., Dentz, and to Cerero, were sufficiently reliable to qualify for admission,

---

[4]Of course, whether hearsay statements are "sufficiently reliable to be admitted without violating the Confrontation Clause is a mixed question." See, e.g., Swan v. Peterson, 6 F.3d 1373, 1379 (9th Cir. 1993), cert. denied, 513 U.S. 985 (1994).

at Trial. First, prior to M.P.'s initial allegations of sexual abuse, M.K. had no preconceived idea that any such abuse was taking place. Hence, it is difficult to believe that M.P.'s initial allegations were the product of inappropriately suggestive questioning by M.K. Rather, the evidence demonstrated that M.P.'s initial allegations were spontaneously made in conjunction with her complaints of pain. Further, these initial allegations were entirely consistent with the statements made by M.P., to both Dentz, and to Cerero. The Petitioner has not presented any reliable evidence to suggest that M.P. fabricated these allegations, or that the testimony of M.K., or Dentz, was not credible, in this respect. Hence, there is no basis upon which to conclude that the Trial Court's decision to admit M.P.'s out-of-court statement, was erroneous.

In the final analysis, we conclude that the Minnesota Court of Appeals' rejection of the Petitioner's Confrontation Clause claim was consistent with clearly established legal principles, and did not involve an unreasonable application of the governing law to the precise facts of this case. In so concluding, we note that the holding in Idaho v. Wright makes clear that, whether a hearsay statement bears adequate indicia of reliability, is a question of degree. Here, we find that the Court of Appeals' determination is well within the bounds of "reasonableness."

B. Sufficiency of Evidence.

1. Standard of Review. The Petitioner contends that the evidence submitted during his Trial was insufficient as a matter of law to sustain his convictions. "[A] district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Title 28 U.S.C. §2254(a). Thus, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). Accordingly, before a Writ may issue, the Petitioner must establish that the State's exercise of custody over his person is an affront to the Constitution, a Federal law, or a Federal treaty. Pruett v. Norris, 153 F.3d 579, 582 (8th Cir. 1998); Robinson v. Leapley, 26 F.3d 826, 829 (8th Cir 1994); Maynard v. Lockhart, 981 F.2d 981, 986 (8th Cir. 1992); Garcia v. Powers, 973 F.2d 684, 685 (8th Cir. 1992).

Congress has recently restricted the scope of a Federal Court's review of Habeas Petitions, whose underlying claims have been adjudicated in a State Court. See, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996). A Federal District Court's authority to vitiate State

Court decisions, by the granting of a Writ of Habeas Corpus, is now limited to the narrow class of claims which have exhausted all State Court remedies, and which involve an adjudication that either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d); see also, Thiel v. Schutzle, 200 F.3d 1120, 1122 (8th Cir. 1999).

In Lindh v. Murphy, 96 F.3d 856, 870 (7th Cir. 1996), rev'd on other grounds, 521 U.S. 320 (1997), the Seventh Circuit stated, " * * * a reasonable decision by the state court must be honored." Id. at 871.

Thus, where a petitioner challenges a State Court's application of law to fact, relief is possible only where no reasonable jurist would view the State Court's ruling as correct. See, Jackson v. Johnson, 150 F.3d 520, 523 (5th Cir. 1998). Since "Section 2254(d)(1) requires federal courts to take into account the care with which the State Court considered the subject," a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment." Lindh v. Murphy, supra at 869.

As stated in Lindh, a State Court decision, which is within the bounds of what the Supreme Court has determined to be reasonable, must be respected, "not because it is right, * * * but because the grave remedy of upsetting a judgment entered by another judicial system after full litigation is reserved for grave occasions." Id. at 871.

Further, in reviewing a Habeas Petition in which the sufficiency of the evidence supporting the petitioner's original conviction is challenged, our Court of Appeals has stated:

> This court must view the evidence in the light most favorable to the government and sustain the verdict if it is supported by substantial evidence. Moreover, on appeal, the government must be given the benefit of all inferences that may logically be drawn from the evidence. It is not necessary that the evidence exclude every reasonable hypothesis except guilt; instead, the evidence is simply sufficient if it will convince a trier of fact beyond a reasonable doubt that the defendant is guilty. This court will not disturb a conviction if the evidence rationally supports two conflicting hypotheses. Each of the elements of the crime charged may be proven by circumstantial evidence, as well as by direct evidence. And finally, this court must keep in mind that the standard to be applied to determine the sufficiency of the evidence is a strict one, and the finding of guilt should not be overturned lightly.

Hill v. Norris, 96, F.3d 1085, 1088 (8th Cir. 1996), citing United States v. Brown, 921 F.2d 785, 791 (8th Cir. 1990)(citations and quotation omitted).

Our function as a reviewing court, therefore, is not to reweigh the evidence. United States v. Anderson, 78 F.3d 420, 422 (8th Cir. 1996). To the contrary, we must accord "great deference" where a State Appellate Court has found the evidence supporting the conviction constitutionally sufficient, as the Minnesota Court of Appeals has in this case. Ward v. Lockhart, 841 F.2d 844, 846 (8th Cir. 1988).

2. Legal Analysis. The Petitioner argues that the evidence presented at his Trial was insufficient to support his conviction, primarily because of the inherent unreliability of the statements that were made by M.P. We disagree. Here, we have reviewed the substance of the Minnesota Court of Appeals' resolution of the Petitioner's contentions, and we are unable to conclude that its decision was based upon an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings.

As noted by the Minnesota Court of Appeals, the evidence presented at Trial demonstrated that M.P.'s statements to M.K., Dentz, and to Cerero, were sufficiently reliable to qualify for admission, at Trial. Further, although the Petitioner continues to challenge the reliability of M.K.'s testimony, as it was presented at Trial, in our considered view, this evidence was sufficient to warrant the Jury's finding of guilt. At Trial, the Jury was presented with

testimony from Cerero, and Dentz, regarding the statements that were made by M.P., and therefore, M.K.'s statements, regarding M.P.'s allegations, were sufficiently corroborated. Moreover, the Jury had an ample opportunity to evaluate, first-hand, M.K.'s demeanor, and deportment, while testifying. Apparently, the Jury found M.K. to be a credible witness and, because the credibility of a witness is for the Jury to determine, it is not for us to challenge the substantiality of her testimony, absent a showing that, as a matter of law, the testimony is insufficient. See, Daniels v. Wood, 819 F.2d 195, 198 (8th Cir. 1987); see also, U.S. v. Stroh, 176 F.3d 439 (8th Cir. 1999)(in reviewing sufficiency of evidence to support conviction, Court can neither weigh the evidence nor assess the credibility of the witnesses); U.S. v. Hawkey, 148 F.3d 920 (8th Cir. 1998). Thus, we must accept the Jury's determination, that this evidence demonstrated that the Petitioner was guilty of abusing M.P, as he draws nothing to our attention which requires a different conclusion as a matter of law.

While the Petitioner would have us totally revisit the same contentions that have already be resolved by the Minnesota Court of Appeals, we cannot. As we have already stated, our function as a reviewing Court is not to reweigh the evidence. See, United States v. Anderson, supra at 422. To the contrary, we must accord "great

deference" to the Minnesota Court of Appeal's decision. See, Ward v. Lockhart, supra at 846.

Here, the Petitioner has failed to demonstrate that the decision of the Minnesota Court of Appeals was unreasonable, and therefore, it must be accepted. Moreover, our independent review of the evidence presented at Trial convinces us that, when viewed in a light most favorable to the State, it was sufficient to permit the Jury's Verdict. As such, we recommend that the Petitioner's request for Habeas relief be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

1. That the Petition for Writ of Habeas Corpus [Docket No. 1] be denied.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than August 3, 2001,** a writing which specifically identifies those portions of the Report

to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than August 3, 2001,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.